

UNITED STATES OF AMERICA

v.                                      Criminal No. 3:08CR146

SAEED ABDUL MUHAMMAD

## MEMORANDUM OPINION

Saeed Abdul Muhammad, a federal inmate proceeding pro se, submitted this motion and a supporting memorandum under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence ("§ 2255 Motion"). In his § 2255 Motion, Muhammad raises the following claims for relief:

Claim One:    Counsel provided ineffective assistance pre-trial by:
    (a) failing to move to suppress Muhammad's involuntary confession;
    (b) failing to move to dismiss based on a violation of Muhammad's speedy trial rights;
    (c) failing to interview two witnesses;
    (d) failing to inform Muhammad "of the true risks associated with proceeding to trial versus pleading guilty." (§ 2255 Mot. 5.)

Claim Two:    Counsel provided ineffective assistance during trial by:
    (a) failing to subpoena two witnesses;
    (b) failing to effectively cross-examine the Government's witnesses;
    (c) failing to object to the Government's leading questions and vouching for its witnesses;

(d) failing to object to hearsay testimony;

(e) failing "to object to and/or request jury instructions" (id. at 6);

(f) failing to allow Muhammad to testify despite his request to do so.

Claim Three: Counsel provided ineffective assistance during sentencing by:

(a) failing to argue against the 21 U.S.C. § 851 sentencing enhancement;

(b) failing to argue that the mandatory life sentence for Count One was unconstitutional because it violated the Equal Protection Clause;[1] and,

(c) failing to argue that Muhammad's mandatory life sentence was illegal based on the unconstitutional disparity between cocaine base and powder.

Claim Four: Appellate counsel rendered ineffective assistance by:

(a) failing to raise a speedy trial violation;

(b) failing to properly argue insufficiency of the evidence;

(c) failing to argue that trial counsel should have sought certain jury instructions; and,

(d) failing to argue that Muhammad's sentence "was illegal and unconstitutional because it was based on racial disparity" (id. at 9).

---

[1] "No State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

Claim Five:    Muhammad's sentence is no longer valid in
               light of the Fair Sentencing Act of 2010.[2]

The Government has responded.[3]  Muhammad has replied.  The
matter is ripe for disposition.

## I.    FACTUAL AND PROCEDURAL HISTORY

On March 19, 2008, the grand jury charged Muhammad with
conspiracy to distribute and possess with intent to distribute
fifty grams or more of cocaine base (Count One), and possession
with intent to distribute cocaine hydrochloride (Count Two).
(Indictment 1-2, ECF No. 10.)  On June 4, 2008, a jury found
Muhammad guilty of both counts.  The Court sentenced Muhammad to
life in prison on Count One and a concurrent 240-month sentence
on Count Two.  (J. 2, ECF No. 29.)

On appeal, Muhammad argued that the Court erred in denying
his Fed. R. Civ. P. 29 Motion because insufficient evidence
existed to convict him of Count One.  See United States v.
Muhammad, 337 F. App'x 349, 350 (4th Cir. 2009).  The United
States Court of Appeals for the Fourth Circuit affirmed his
conviction.  Id. at 350-51.  On January 11, 2010, the United

---

[2] Fair Sentencing Act of 2010, Pub. L. No. 111-120, 124
Stat. 2372.

[3] The Government's Motion for an Extension of Time (ECF
No. 50) will be granted and its response will be deemed timely
filed.

States Supreme Court denied petition for a writ of certiorari. Muhammad v. United States, 558 U.S. 1130 (2010).

## II.  ALLEGED INEFFECTIVE ASSISTANCE

To demonstrate ineffective assistance of counsel, a convicted defendant must show first, that counsel's representation was deficient and second, that the deficient performance prejudiced the defense.  Strickland v. Washington, 466 U.S. 668, 687 (1984).  To satisfy the deficient performance prong of Strickland, the convicted defendant must overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'" Burch v. Corcoran, 273 F.3d 577, 588 (4th Cir. 2001) (quoting Strickland, 466 U.S. at 689).  The prejudice component requires a convicted defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Strickland, 466 U.S. at 694.  In analyzing ineffective assistance of counsel claims, it is not necessary to determine whether counsel performed deficiently if the claim is readily dismissed for lack of prejudice.  Id. at 697.

## A. Pretrial Proceedings

In Claim One (a) Muhammad faults counsel for failing to move to suppress Muhammad's confession. In sum, Muhammad argues that his "confession was involuntary and without proper notice or waiver of right to remain silent and right to have counsel presen[t]." (§ 2255 Mot. 5.) Muhammad fails to demonstrate deficiency of counsel or resulting prejudice based on this conclusory allegation. Sanders v. United States, 373 U.S. 1, 19 (1963) (finding denial of § 2255 motion appropriate where it "stated only bald legal conclusions with no supporting factual allegations"). First, the record demonstrates that police read Muhammad his Miranda v. Arizona, 384 U.S. 436, 444 (1966) rights, Muhammad acknowledged that he understood those rights, and nevertheless, elected to make a statement to police about his involvement in drug trafficking. (June 3, 2008 Tr. 138-42, 145-47.) Moreover, counsel explains that he had no reason to file a suppression motion based upon the involuntary confession claim Muhammad urges here, as Muhammad insisted to counsel that he never spoke with police and the police "maid [sic] it up." (Gov't's Resp. Attach A. ("Townsend Aff.") ¶ 5, ECF No. 51-1.) Accordingly, Claim One (a) will be dismissed.

In Claim One (b) Muhammad faults counsel for failing to move for dismissal of the Indictment based on a speedy trial

violation[4] despite Muhammad's request for counsel to do so. Muhammad demonstrates no deficiency of counsel. Muhammad demonstrates no deficiency of counsel. Counsel explains that Muhammad raised speedy trial concerns to him in May of 2008. (Townsend Aff. ¶ 6.) Counsel researched Muhammad's concern and found no violation of Muhammad's speedy trial rights. (Id.) Muhammad fails to establish an error in counsel's conclusions.

Muhammad was arrested on February 27, 2008 and first appeared in Court the following day. (ECF Nos. 3, 7).[5] The Government charged Muhammad by Indictment on March 19, 2008, twenty-one days after his arrest. (ECF No. 10.) No speedy trial violation occurred under 18 U.S.C. § 3161(b) because the United States filed the Indictment within thirty days.

The March 19, 2008 Indictment also reset the speedy trial clock, and Muhammad first appeared before the Court on the Indictment on April 1, 2008. (ECF No. 12); see 18 U.S.C.

---

[4] The Speedy Trial Act ("the Act") requires that "[a]ny information or indictment charging an individual with . . . an offense shall be filed within thirty days from the date [of] arrest[ ] . . . ." 18 U.S.C. § 3161(b). The Act also requires that the trial for a defendant who pleads not guilty take place within seventy days of the filing and making public of the information or indictment, or the date on which the defendant appeared before a judicial officer in that court on the pending charge, whichever is later. 18 U.S.C. § 3161(c)(1). If there is a violation of the Act, upon counsel's motion, the indictment must be dismissed. 18 U.S.C. § 3162(a)(2).

[5] While the CM/ECF docket states that Muhammad was arrested on February 28, 2008, the executed arrest warrant states the arrest occurred on February 27, 2008. (See Warrant for Arrest at 1, ECF No. 7).

§ 3161(c)(1). Sixty-three days expired between Muhammad's April 1, 2008 arraignment on the pending charges and his trial on the charges on June 3, 2008. (ECF No. 20). Because the United States tried Muhammad within seventy days of his arraignment on the Indictment, no speedy trial violation occurred. United States v. Segers, Nos. 97-4116, 97-4131, 1998 WL 436325, at *5 (4th Cir. July 20, 1998); United States v. Black, No. 87-5112, 1988 WL 68406, at *3 (4th Cir. July 1, 1988). Thus, counsel reasonably eschewed pursuing Muhammad's speedy trial claim because it lacked merit. Because Muhammad demonstrates no deficiency of counsel or prejudice, Claim One (b) will be dismissed.

In Claim One (c) and related Claim Two (a), Muhammad faults counsel for failing to interview and subpoena Tony Evans and Raheem Pleasants.[6] Muhammad contends that, if counsel had interviewed and subpoenaed Evans and Pleasants, they "would have confirmed that both were addicts and did not work with or for Petitioner." (§ 2255 Mot. 5.)

Muhammad fails to demonstrate any deficiency of counsel or prejudice from counsel's purported error. First, counsel avers that Muhammad never requested for him to interview Evans or Pleasants, but instead informed counsel that he wanted one

---

[6] Muhammad spells Pleasants's name incorrectly. The Court uses the spelling from the trial transcript. (See June 3, 2008 Tr. 51.)

witness, Donna Pollard, to testify. (Townsend Aff. ¶ 15.)
Second, the evidence demonstrated that Muhammad used Evans and
Pleasants to conduct drug transactions. At trial, the
confidential informant ("CI") testified that Muhammad arranged
for the CI to purchase crack cocaine at Angelo "Tony" Evans's
home on three occasions. (June 3, 2008 Tr. 61-62, 64-67, 70-
71.) On one occasion, Muhammad arranged for the CI to buy
directly from Evans in Muhammad's absence due to the CI's
tardiness. (June 3, 2008 Tr. 66-69.) The CI purchased a half
ounce of crack cocaine from Evans in exchange for $600. (June
3, 2008 Tr. 66-69.) The CI testified that Muhammad later
changed the meet-up spot to the home of the CI's cousin, Raheem
Pleasants, because Muhammad "was having problems" or "a money
issue" with Tony Evans. (June 3, 2008 Tr. 72.) The CI
purchased crack cocaine from Muhammad at Pleasants's home on two
different dates. (June 3, 2008 Tr. 72-73, 78-79.) Claims One
(c) and Two (a) lack merit and will be dismissed.

In Claim One (d), Muhammad faults counsel for "failing to
inform Petitioner of the true risks associated with proceeding
to trial versus pleading guilty . . . ." (§ 2255 Mot. 5.)
Specifically, Muhammad contends,

[(i)] counsel repeatedly wanted Petitioner to
cooperate with the government but Petitioner refused
to do so; counsel never told Petitioner that he could
plead guilty without a plea agreement and without
cooperating; [(ii)] counsel never told Petitioner that
his sentence would be a mandatory life unless he pled
guilty; [(iii)] Petitioner offered to plead guilty to

8

possession with intent to distribute but counsel never conveyed the offer to the government, but rather told Petitioner that "we're going to trial"; had Petitioner been informed of the true risks associated with proceeding to trial versus pleading guilty, and that he could plead guilty without cooperating, Petitioner would have pled guilty.

(Id. at 5.)

In Claim One (d)(i), Muhammad faults counsel for never explaining that he could plead guilty without a plea agreement and without cooperating.[7] Muhammad fails to demonstrate any prejudice from counsel's purported omission.

The Government first offered Muhammad a guilty plea to Count One without seeking an enhanced statutory penalty based on Muhammad's prior convictions. (Townsend Aff. ¶ 9.) On three occasions, counsel discussed the plea offer and estimated sentences compared with the sentences Muhammad could receive if he insisted upon going to trial. (Id.) Muhammad informed counsel that he intended to proceed with a jury trial, and counsel informed the Government of Muhammad's decision. (Id. ¶ 10.) Two days later, Muhammad informed counsel that he had changed his mind and wanted to plead guilty pursuant to the proposed plea agreement, counsel conveyed this change to the Government, and the Government forwarded a written plea agreement. (Id. ¶ 11.) Counsel reviewed the written plea

---

[7] Counsel avers that he discussed with Muhammad the possibility of entering a guilty plea pursuant to a plea agreement or without a plea agreement. (Townsend Aff. ¶ 7.)

agreement with Muhammad, and subsequently, Muhammad changed his mind again and informed counsel that he wanted to continue with his not guilty plea and a jury trial. (Id. ¶ 12.)

Muhammad fails to establish that, but for counsel's purported error in failing to explain the option to do so, he would have insisted on pleading guilty without a plea agreement and without cooperating. No evidence suggests that Muhammad ever intended to plead guilty without a plea agreement. Instead, the record establishes Muhammad's unwillingness to plead guilty to the conspiracy count at any time prior to his conviction. Indeed, Muhammad continues even now to maintain his innocence with respect to the conspiracy count.

While the Government's plea offer was open, Muhammad rejected the Government's offer to plead guilty and expressed his desire to proceed to trial. (Id. ¶¶ 9-12.) Leading up to trial, Muhammad expressed his desire to testify as to his innocence. (Id. ¶ 16.) Specifically, Muhammad wanted to testify during trial that the police officers "were lying when they stated that Muhammad made a statement after his arrest," and that the CI "was lying" when he "indicated that he made controlled purchases of cocaine base from" Muhammad." (Id. ¶ 16.)

Muhammad's assertions in his § 2255 Motion echo his statements to counsel prior to trial. Muhammad maintains that

he wished to testify to demonstrate that no conspiracy existed and the CI's statements regarding the drug sales were false. (§ 2255 Mot. 6.) Muhammad's continued and persistent professions of innocence belie his current assertion that he would have pled guilty without cooperating and without a plea agreement but for counsel's constitutional deficiency in failing to explain that option. See Jackson v. United States, 638 F. Supp. 2d 514, 581-82 (W.D.N.C. 2009) (concluding that in light of the petitioner's expressed desire to fight the charges, he failed to demonstrate a reasonable probability that he would have pled guilty during the window of opportunity in which to plead guilty); Goudie v. United States, 323 F. Supp. 2d 1320, 1335-36 (S.D. Fla. 2004) (rejecting petitioner's claim that he would have accepted when, at the time the plea was open, the petitioner insisted he was innocent). Accordingly, Muhammad fails to establish any prejudice from counsel's purported omission. Claim One (d)(i) will be dismissed.

In Claim One (d)(iii), Muhammad contends that he offered to plead guilty only to Count Two, possession with intent to distribute, but that counsel never conveyed his offer to the Government. Counsel recalls no "offer" from Muhammad to plead guilty to Count Two. (Townsend Aff. ¶ 8.) Counsel swears that if, Muhammad had suggested the plea offer, he would have communicated that offer to the Government, while also advising

11

Muhammad that the Government would not accept that offer in light of the more serious conspiracy count. (Id.)

That, of course, is the logical and professional course. Considering the incredulity of Muhammad's positions on other issues in this proceeding and the professional manner in which counsel performed in general, the Court cannot credit Muhammad's unsupported assertion that he asked counsel to broker an offer to plead guilty to Count Two.

In any event, Muhammad again demonstrates no prejudice from counsel's error. No evidence suggests that Muhammad had the option to plead guilty to only Count Two. Cf. Lafler v. Cooper, 132 S. Ct. 1376, 1387 (2012) (observing a defendant cannot demonstrate prejudice with respect to a plea offer "[i]f no plea offer is made"). Muhammad's contention that the Government would have accepted his offer to plead guilty to Count Two, also defies logic. The Government offered Muhammad the ability to plead guilty to Count One, the more serious conspiracy count, and Muhammad rejected the offer. Muhammad fails to demonstrate that, but for counsel's errors, a reasonable probability exists that the Government would have accepted Muhammad's offer to plead to a lesser count. Claim One (d)(iii) will be dismissed.

In Claim One (d)(ii), Muhammad argues that counsel failed to inform him that his sentence would be mandatory life unless

he pled guilty. Muhammad fails to establish that, but for counsel's purported omission, he would have insisted on pleading guilty. Counsel avers that, before trial, he also discussed potential sentencing ranges, the possibility of entering a guilty plea pursuant to a plea agreement, a guilty plea without a plea agreement, a bench trial, and a jury trial. (Townsend Aff. ¶ 7.) Counsel informed Muhammad that, if he chose to proceed to trial, he would face a mandatory life sentence. (Id.) The Court accepts counsel's sworn statements and rejects Muhammad's contrary assertions.

Moreover, the record establishes Muhammad's awareness that he could be sentenced of life in prison when he decided to reject the plea offer and proceed to trial. During the arraignment, the counsel for the United States read the charges against Muhammad and explained that Count One carried a mandatory minimum sentence of ten years of incarceration and that Muhammad could be sentenced up to a maximum sentence of life in prison. (Arraignment Apr. 1, 2008 2:57:22-2:58:06.)[8] Muhammad agreed that he understood the charges against him and the potential penalties he faced. (Arraignment Apr. 1, 2008 2:58:21-2:58:26.)

Muhammad also certainly knew that he had several previous felony drug convictions. Based upon Muhammad's criminal record,

---

[8] All citations to the arraignment refer to the Court's digital audio file of that proceeding.

13

counsel advised Muhammad prior to any plea offer from the Government, that he "was likely facing a mandatory life sentence." (Townsend Aff. ¶ 4.)

Muhammad also knew that the Government offered him a guilty plea to Count One with a promise not to seek an enhanced statutory penalty under 21 U.S.C. § 851 based upon Muhammad's prior convictions. (Id. ¶ 9.) Thus, even if counsel did not specifically advise Muhammad that he would be sentenced to life in prison if he went to trial, Muhammad knew that he faced the prospect of a life sentence without the benefit of the proffered plea agreement and elected to proceed to trial. Muhammad provides no evidence or facts that he believed otherwise.

Additionally, Muhammad does not dispute that counsel warned him that he could receive a much higher sentence if he rejected the plea and continued to trial.[9] After Muhammad's final rejection of the plea, counsel avers: "At this point, [I] told Mr. Muhammad in extremely blunt terms that the Government would seek a statutorily enhanced sentence . . . . [I] told Mr. Muhammad that a life sentence meant he would die in prison; he

---

[9] Moreover, Muhammad's continued sworn professions of his innocence belie his vague suggestion that the mandatory nature of the life sentence would have altered his determination about whether to plead guilty.

would not be eligible for parole." (Id. ¶ 12 (spelling corrected).)[10]

Taken as a whole, the record demonstrates that Muhammad knew that he could receive life in prison once he rejected the Government's plea offer. Thus, he has failed to establish that he would have pled guilty, but for counsel's alleged failure to specifically explain that he would automatically be sentenced to life in prison if found guilty after a trial. Claim One (d)(ii) will be dismissed.

## B. Trial Claims

In Claim Two (b), Muhammad contends that counsel failed to effectively cross-examine the Government's witnesses regarding the video and audio recordings of Muhammad's drug transactions with the CI. Counsel effectively questioned the Government's witnesses on the quality of the recordings introduced at trial and about the reliability of the CI. Muhammad fails to identify what further information counsel could, or would, have elicited had he more thoroughly questioned the witnesses about the recordings, and thus has demonstrated no deficiency or prejudice. See Sanders, 373 U.S. at 19; United States v. Terry, 366 F.3d 312, 316 (4th Cir. 2004) (requiring that where a

---

[10] Although Muhammad disputes this fact, counsel swears that at this time, he explained to Muhammad that "based on [counsel's] understanding of the evidence [Muhammad] would likely be convicted and sentence to life in prison." (Townsend Aff. ¶ 12.)

petitioner faults counsel for not calling a witness, the petitioner should provide "concrete evidence of what [the witness] would have testified to in exculpation"). Muhammad demonstrates neither deficiency nor prejudice and Claim Two (b) will be dismissed.

In Claim Two (c) Muhammad states, in sum, counsel "fail[ed] to object to the government's repeated leading questions and the vouching of its witnesses both during trial and during closing arguments." (§ 2255 Mot. 6.) In Claim Two (d), Muhammad faults counsel for "fail[ing] to object to hearsay testimony and the violation of Petitioner's 6th Amendment right to confrontation."[11] (Id.) Muhammad's conclusory allegations, without examples of the offending questions or testimony, fail to demonstrate any deficiency of counsel or resulting prejudice. See Sanders, 373 U.S. at 19. Accordingly, Claims Two (c) and (d) will be dismissed.

In Claim Two (e), Muhammad faults counsel for

> failing to object to and/or request jury instructions that: (a) a conspiracy could not be between a defendant and a government informant; (b) a crime could not be proven on the basis of uncorroborated statements; (c) a conspiracy could not be proven on the basis of a buyer-seller agreement; (d) a paid informant's testimony must be considered with caution . . . .

---

[11] "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ." U.S. Const. amend. VI.

(§ 2254 Mot. 6.) Muhammad fails to establish any prejudice from counsel's failure to request the jury instructions Muhammad desired. The Court gave a thorough conspiracy instruction that accurately stated controlling law. (See Gov't's Resp. Attach. C, ECF No. 51-3.) The Court also gave an instruction on the jury's need carefully to examine and to weigh a paid informant's testimony. (See id. Attach D, ECF No. 51-4.) Moreover, even if counsel had requested the instructions that Muhammad suggests, there is no reasonable probability that the jury would have found Muhammad not guilty of the conspiracy count. As the Fourth Circuit aptly explained in reviewing the sufficiency of the evidence,

> the Government presented ample evidence to establish that Muhammad engaged in a conspiracy to distribute fifty grams or more of cocaine base. Although Muhammad correctly asserts that he could not be convicted of a conspiracy to distribute cocaine base if the only other member of the conspiracy was a confidential informant, see United States v. Chase, 372 F.2d 453, 459 (4th Cir. 1967), Muhammad's argument that the Government presented no other evidence, circumstantial or otherwise, to establish the existence of other members of the conspiracy does not withstand scrutiny.
>
> To the contrary, the Government established that Muhammad used homes belonging to two other individuals to conduct his drug transactions; used one of those individuals to distribute cocaine base on Muhammad's behalf on at least one occasion; and confessed to officers that he had been dealing cocaine base for approximately six months, purchased more than fifty grams of powder cocaine from a distributor in Maryland, purchased from a distributor in Virginia, and that he used a friend's home to prepare cocaine base. Since the evidence also established that cocaine like that converted by Muhammad could not have been grown locally, the logical inference was that

17

Muhammad obtained the large amounts of cocaine from another individual who, based on the amount of drugs purchased, likely knew that Muhammad would distribute the drug.

. . . .

In light of testimony regarding the extent and locations of Muhammad's drug sales between January 18 through February 27, 2008, the inability to grow the cocaine locally, and the marked bills and amount of drugs recovered from Muhammad on the day of his arrest, we find that sufficient evidence exists to allay any concerns about the veracity or trustworthiness of Muhammad's confession.

United States v. Muhammad, 337 F. App'x 349, 350-51 (4th Cir. 2009). Muhammad has failed to demonstrate prejudice, and Claim Two (e) will be dismissed.

In Claim Two (f), Muhammad contends that counsel failed to allow Muhammad to testify despite Muhammad's desire to do so. Muhammad claims that, if he had known that it was his decision whether or not to testify, he would have testified that he never received Miranda warnings, his confession was involuntary, no conspiracy existed, and the CI gave false testimony. (§ 2255 Mot. 6.) Muhammad again demonstrates no prejudice as he fails to demonstrate that, but for counsel's purported error regarding Muhammad's desire to testify, a reasonable probability exists that the jury would have found him not guilty of the conspiracy count. Muhammad has failed to provide any explanation about why a jury would have given his testimony any weight in light of the overwhelming evidence of his guilt. See Terry, 366 F.3d at 316. As the Fourth Circuit explained, "sufficient evidence exists to

allay any concerns about the veracity or trustworthiness of Muhammad's confession." Muhammad, 337 F. App'x at 351. Claim Two (f) will be dismissed for lack of merit.

### C. Sentencing Claims

In Claim Three (a), Muhammad faults counsel for failing to argue "that it is impossible to determine from the documents available whether Petitioner's prior Virginia convictions were serious drug offenses within the meaning of 21 [U.S.C. §] 851." (§ 2255 Mot. 8.) Counsel reasonably declined to pursue the meritless objection that Muhammad urges here because there is no requirement that his prior felony drug offenses must be "serious drug offenses." (Id.) Under 21 U.S.C. § 841(b)(1)(A), if a defendant has been convicted of "two or more . . . felony drug offense[s] . . . such person shall be sentenced to a mandatory term of life imprisonment without release." 21 U.S.C. § 841(b)(1)(A). The United States provided notice to Muhammad in advance of trial pursuant to § 851 that it intended to seek an enhanced sentence based upon his prior felony drug offenses. (Gov't's Notice 2, ECF No. 15.) The Notice explicitly set forth four prior felony drug convictions. (Id.) Thus, Muhammad fails to demonstrate any deficiency of counsel and Claim Three (a) will be dismissed.

In Claims Three (b) and (c), Muhammad faults counsel for failing to argue that the mandatory life sentence for Count One

violated the Equal Protection Clause and "was illegal because it was based on the unconstitutional disparity between cocaine base and cocaine powder offenses." (§ 2255 Mot. 8.) Counsel reasonably eschewed advancing Muhammad's meritless objections. The Fourth Circuit has "rejected arguments that the sentencing disparity between powder cocaine and crack offenses violates either equal protection or due process." United States v. Samuels, 445 F. App'x 704, 704 n.* (4th Cir. 2011) (citations omitted). Because Muhammad has demonstrated no deficiency of counsel and has shown no prejudice flowing from the deficiencies that he asserts, Claims Three (b) and (c) will be dismissed.

**D. Appellate Claims**

In Claim Four, Muhammad claims that his appellate counsel rendered ineffective assistance. "In order to establish a claim that appellate counsel was ineffective for failing to pursue a claim on direct appeal, the applicant must normally demonstrate" that appellate counsel performed deficiently and that a reasonable probability of a different result exists. Bell v. Jarvis, 236 F.3d 149, 164 (4th Cir. 2000) (citing Strickland v. Washington, 466 U.S. 668, 688, 694 (1984)). Counsel had no obligation to assert all non-frivolous issues on appeal. Rather, "'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy."

Smith v. Murray, 477 U.S. 527, 536 (1986) (quoting Jones v. Barnes, 463 U.S. 745, 751-52 (1983)). A presumption exists that appellate counsel "'decided which issues were most likely to afford relief on appeal.'" Bell, 236 F.3d at 164 (quoting Pruett v. Thompson, 996 F.2d 1560, 1568 (4th Cir. 1993)). "'[O]nly when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome.'" Id. (quoting Smith v. Robbins, 528 U.S. 259, 288 (2000)).

On appeal, counsel argued that the district court erred in denying Muhammad's Fed. R. Civ. P. 29 Motion because insufficient evidence existed to convict him of Count One. See Muhammad, 337 F. App'x at 350. Thus, counsel raised the underlying issue in Claim Four (b). Muhammad has failed to suggest on what additional basis appellate counsel should have attacked the sufficiency of the evidence. Sanders, 373 U.S. at 19. Muhammad also fails to demonstrate that the issues presented in Claim Four (a), (c), and (d) are clearly stronger than the sufficiency issue counsel chose to pursue on appeal. Thus, Muhammad has demonstrated no deficiency or prejudice.[12]

---

[12] For the reasons discussed supra in Part II.A and B, appellate counsel, like trial counsel, reasonably declined to advance Muhammad's meritless claims that a speedy trial violation occurred, that the jury instructions were incomplete, and that his sentence was illegal and unconstitutional.

### III. ILLEGAL SENTENCE

In Claim Five, Muhammad argues that the Fair Sentencing Act of 2010 ("FSA") invalidates his sentence. Muhammad is incorrect. See United States v. Snow, 509 F. App'x 808, 809 (10th Cir. 2013) (concluding that the FSA fails to apply retroactively to a defendant sentenced prior to the FSA's enactment); United States v. Duty, No. 1:08CR00024-032, 2013 WL 3873076, at *5 (W.D. Va. July 25, 2013); cf. United States v. Gaffney, 524 F. App'x 24, 25 (4th Cir. 2013) (concluding the same in the context of a motion for reduction of sentence under 18 U.S.C. § 3582(c)(2)). Claim Five will be dismissed.

### IV. MOTION TO AMEND

On July 17, 2013, Muhammad filed a motion entitled "LEAVE TO FILE SUPPLEMENTAL BRIEF IN SUPPORT OF PENDING 28 U.S.C.[ ]§ 2255 MOTION" ("Motion to Amend," ECF No. 52) in which he seeks to add a claim that Alleyne v. United States, 133 S. Ct. 2151 (2013) invalidates his sentence. Muhammad argues that Alleyne requires that his § 851 sentencing enhancement must be submitted to the jury and therefore he should be resentenced. (Supp'l Mem. Supp. § 2255 Mot. 2-4, ECF No. 52-1.)

"Under Rule 15(a) leave to amend shall be given freely, absent bad faith, undue prejudice to the opposing party, or futility of amendment." United States v. Pittman, 209 F.3d 314,

317 (4th Cir. 2000) (citations omitted). As explained below, Muhammad's amendment is futile.

In Alleyne, the Supreme Court addressed a defendant's mandatory minimum sentence of seven years for brandishing a firearm under 18 U.S.C. § 924(c)(1)(A)(ii). Alleyne, 133 S. Ct. 2155-56. The Supreme Court held that, other than prior convictions, "facts that increase [statutory] mandatory minimum sentences must be submitted to the jury." Id. at 2163. Muhammad fails to demonstrate that he can mount a meritorious claim based on the decision in Alleyne. See United States v. Croft, No. 12-4890, 2013 WL 3615944, at *1 (4th Cir. July 16, 2013) ("Alleyne did not disturb Almendarez-Torres v. United States, 523 U.S. 224 (1998), which authorizes a district court to apply an enhanced sentence based upon its finding of applicable prior convictions . . . ." (citing Alleyne, 133 S. Ct. at 2160 n.1) (parallel citations omitted)). Accordingly, Muhammad's Motion to Amend (ECF No. 52) will be denied as futile.

## V. CONCLUSION

For the foregoing reasons, Muhammad's claims will be dismissed. Muhammad's Motion to Amend (ECF No. 52) will be denied. Muhammad's § 2255 Motion (ECF No. 44) will be denied

and the action will be dismissed. A certificate of appealability ("COA") will be denied.[13]

The Clerk is directed to send a copy of this Memorandum Opinion to Muhammad and counsel of record.

It is so ORDERED.

/s/ REP
_____
Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: January 22, 2014

_____

[13] An appeal may not be taken from the final order in a § 2255 proceeding unless a judge issues a COA. 28 U.S.C. § 2253(c)(1)(B). A COA will not issue unless a prisoner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The requirement is satisfied only when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" Slack v. McDaniel, 529 U.S. 473, 484 (2000) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 & n.4 (1983)). Muhammad fails to satisfy this requirement.